USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/17/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
MICHAEL ERDHEIM,                                              :
                                   Petitioner,                :
                                                              :   18 Civ. 8601 (LGS)
                  -against-                                   :
                                                              :   **OPINION AND ORDER**
STUART HARRIS, *both individually and as*                     :
*Executor of the Frank Worth Estate*,                         :
                                   Respondent.                :
                                                              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Pro se Petitioner Michael Erdheim seeks to confirm in part and modify in part an August 3, 2018, arbitration award regarding a disputed contract assignment (the "New York Award"). Respondent Stuart Harris opposes the Petition. For the reasons below, the Petition is dismissed because the Court does not have subject matter jurisdiction to adjudicate this matter. Petitioner is advised that he may seek to refile a petition in state court.

**I.   BACKGROUND**

The following uncontested facts are taken from the documents and evidence submitted in the arbitration proceedings and in support of the Petition.

Respondent is the executor of the estate of Frank Worth, a famous photographer, whose iconic work includes the image of Marilyn Monroe standing above a subway grate with her skirt billowing. In 2016, Respondent and non-party Capital Art, Inc. ("Capital") arbitrated a dispute in Nevada (the "Nevada Arbitration") over Capital's alleged failure to pay royalties for its use of Frank Worth negatives and photographs. In October 2016, the Nevada arbitrator awarded Respondent: (1) $70,000 for unpaid royalties for 2014 and 2015, (2) Capital's return of one Frank Worth negative to Respondent and (3) the "option" either to receive future royalty

payments under an existing contract or the negotiation of a new contract, but only if Respondent first provided Capital with clean title for certain negatives (collectively, the "Nevada Award"). If Respondent did not satisfy this condition, the estate would forfeit future royalty rights. Respondent sought to confirm in part and vacate in part the Nevada Award in Nevada state court, but voluntarily dismissed the action in February 2017.

Shortly before the Nevada Arbitration, Petitioner and Respondent entered into a contract (the "Assignment"), dated June 10, 2016 -- the heart of the present dispute. The Assignment transfers to Petitioner a 10% share of the Nevada Award, providing:

> "[Petitioner is] irrevocably transfer[ed] all right, title and interest in a TEN PERCENT INTEREST (10%) in the cash and stock proceeds of the presently contemplated Arbitration Proceedings."

The assignment does not define "Arbitration Proceedings." But the parties do not dispute that the term refers to the Nevada Arbitration. The Assignment requires that the parties arbitrate any disputes with the American Arbitration Association ("AAA").

A dispute later arose. In December 2017, Petitioner commenced arbitration in New York City (the "New York Arbitration"), alleging that Respondent had not paid Petitioner the 10% share or notified him about the Nevada Arbitration and state court dispositions. In his Statement of Claim, Petitioner demanded "at least the sum of $17,116," plus the "value of any additional rights [he had] in" connection with the Worth collection, purportedly valued at $2.77 million in Capital's Securities & Exchange Commission filings. Respondent counterclaimed in the same arbitration for the return of money he had paid to Petitioner.

On August 3, 2018, the New York arbitrator found that Petitioner prevailed on both the claim and counterclaim, and awarded him $7,000 for the claim. The New York Award states

that Petitioner had demanded "up to $74,999" and Respondent had demanded $42,591 for the counterclaim.

The Petition seeks to confirm in part and modify in part the New York Award. Petitioner seeks confirmation that he is the prevailing party but an increase of the award amount, under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 9-11. While the Petition states that the award should be increased "to $74,999," the Reply Memorandum of Law states that Petitioner is entitled to "well in excess of . . . $75,000." Respondent opposes the Petition entirely, and argues that this Court lacks subject matter jurisdiction.

## II.     STANDARD

The FAA governs judicial review of AAA arbitration awards. *See Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, 617 F.3d 177, 182 (2d Cir. 2010). The FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009). If there is a federal question in the underlying arbitration, a court may exercise federal question jurisdiction over a petition. *See Landau v. Eisenberg*, 922 F.3d 495, 497 (2d Cir. 2019) (federal courts have jurisdiction over a petition to confirm if by "look[ing] through the petition to the underlying substantive controversy [they] determine . . . the [arbitration] claims arose under federal law"); *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 381-89 (2d Cir. 2016) (same for a petition to vacate and modify).

If the underlying arbitration concerns only state law, a court must have diversity jurisdiction. *See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009). Diversity requires that all parties to a petition are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; *Durant*, 565 F.3d 56 at 63. The Second

Circuit has not explicitly passed on how amount in controversy should be assessed for FAA petitions. Courts in this district have followed two approaches: the "demand" approach and "award" approach. *See*, *e.g.*, *Odeon Capital Grp., LLC v. Ackerman*, 149 F. Supp. 3d 480, 485 n.7 (S.D.N.Y. 2016) (suggesting district courts have endorsed both approaches in different circumstances); *Nat'l Cas. Co. v. Resolute Reinsurance Co.*, 2016 WL 1178779, at *2 (S.D.N.Y. Mar. 24, 2016) (following the "demand" approach); *Wise v. Marriott Int'l, Inc.*, No. 6 Civ. 11439, 2007 WL 2200704, at *4 (S.D.N.Y. July 30, 2007) (explicating both approaches); *N. Am. Thought Combine, Inc. v. Kelly*, 249 F. Supp. 2d 283, 285 (S.D.N.Y. 2003) (the same). The "demand" approach construes the amount a party *demanded* in the underlying arbitration as the amount in controversy. The "award" approach instead construes the amount *awarded* as the amount in controversy.[1]

Where subject matter jurisdiction is challenged, a court may consider materials extrinsic to the complaint. *Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002); *accord Devi v. Silva*, 861 F. Supp. 2d 135, 143–44 (S.D.N.Y. 2012). The "party asserting subject matter jurisdiction [must] establish[], by a preponderance of the evidence, that jurisdiction exists." *Landau*, 922 F.3d at 497.

---

[1] Numerous rationales have been offered for each approach. Some district courts suggest that the nature of the petition compels using either the "demand" or "award" approach. *See Wise*, 2007 WL 2200704, at *4; *N. Am. Thought Combine*, 249 F. Supp. 2d at 285. For example, for a petition to confirm, the "demand" approach may be superior to the "award" approach, because the former tracks the Second Circuit's view of arbitration confirmation proceedings as "quasi-appellate." *See Nat'l Cas. Co.*, 2016 WL 1178779, at *2. Just as an appellate court would assess the amount in controversy based on the amount sought in a pleading, and not based on the damages awarded, so too should a district court look to the underlying arbitration demand and not the award. Furthermore, the "demand" approach avoids an odd result of the "award" approach, which prevents a prevailing respondent -- who has avoided liability and attained a $0 award -- from ever invoking diversity jurisdiction. *See id.*

4

## III. DISCUSSION

The Petition is dismissed for lack of subject matter jurisdiction. It is undisputed that, because the underlying New York Arbitration concerns only a state law claim for breach of contract, jurisdiction must be premised on diversity.[2] *Durant*, 565 F.3d at 63. It is also undisputed that the parties are diverse.[3] The only issue is amount in controversy. While the Second Circuit has not decided when courts should follow the "demand" or "award" approach, amount in controversy is not satisfied under either analysis.

Under the award approach, the amount in controversy is the award itself. The New York Award was $7,000, and plainly does not meet the $75,000 threshold.

Likewise, under the demand approach, the amount in controversy does not exceed $75,000. According to the arbitration filings, the demand ranged from around $17,000 to a maximum of $74,999. The Demand for Arbitration states that the relief Petitioner "seeks [is] recover[y] [of] ten percent (10%) of the value of the 200,000 shares, the [$]70,000 [awarded in the Nevada Arbitration], to wit $17,000, [and] a determination of the value of any additional rights[.]" Petitioner's theory in the arbitration was that he was entitled to a minimum of $17,000, which is 10% of both (i) the $70,000 cash portion of the Nevada Award and (ii) 200,000 Capital shares, worth approximately $100,000, which Respondent allegedly improperly

---

[2] The Petition asserts that the basis for subject matter jurisdiction is federal question jurisdiction under the FAA, rather than diversity jurisdiction. Because Petitioner is pro se, the Court construes the Petition also to assert diversity jurisdiction, as the Petition includes information to determine the parties' citizenships and the amount in controversy. Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). This policy "is driven by the understanding that implicit in the right to self-representation is an obligation . . . of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights[.]" *Id.* at 156–57.

[3] Petitioner is a citizen of New York. As an individual, Respondent is a citizen of New Jersey. As the executor of the Frank Worth estate, Respondent is a citizen of California because of decedent Frank Worth's citizenship. *See* 28 U.S.C. § 1332(c)(2).

5

ceded to Capital. The Statement of Claim repeats this $17,000 calculation several times. Regarding the maximum demand, the New York Award states that Petitioner had sought "up to $74,999." While none of the arbitration submissions filed in this action explain how or at what point this ceiling was determined, the Petition reinforces this number several times. It repeatedly states that Petitioner seeks an "increase[e] [of] the award to $74,999." The Petition indeed bases subject matter jurisdiction not on diversity, but on federal question jurisdiction arising under the FAA. Only after Respondent argued that FAA does not confer federal question jurisdiction and that amount in controversy is inadequate for diversity does the Reply argue, for the first time, that amount in controversy exceeds $75,000.

These belated arguments cannot establish that, under the demand analysis, the amount demanded in the underlying arbitration was over $75,000. First, what the parties argue now is possibly recoverable does not alter evidence of what they actually demanded at the time. Second, although the $74,999 ceiling is close to the threshold and indeed seems designed to avoid diversity jurisdiction, it is improbable that Petitioner could recover near this threshold. Under even a very liberal interpretation, disregarding the repeated assertions of a $74,999 demand ceiling, the amount in controversy cannot be construed to exceed $75,000. *Cf. Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (a party asserting jurisdiction must show that amount in controversy is recoverable to a "reasonable probability").

The Reply advances several theories for why the amount in controversy may exceed $75,000, but it fails to establish the requisite amount by a preponderance of the evidence. *See Landau*, 922 F.3d at 497. For example, the Reply argues that the value of the Worth collection is allegedly between $2.77 and $4.5 million, but it does not show to a reasonable probability that Petitioner himself is entitled to over $75,000 flowing from the collection. Petitioner has rights to

6

the collection only indirectly, through his 10% share of the Nevada Award, *i.e.* his "(10%) interest in the cash and stock proceeds of the presently contemplated [Nevada] Arbitration." For Petitioner to receive over $75,000 through the assignment, the Nevada Arbitration proceeds must exceed $750,000. The Nevada Award granted only $70,000 in cash and no stock, 10% of which is $7,000. The Reply does not contain any evidence or argument for how the arbitration proceeds could be increased almost tenfold.

The Reply and Petition also suggest that Capital and Respondent may have entered into a settlement given Respondent's voluntary dismissal of the Nevada court action, and that Petitioner is entitled to a portion of the settlement under the assignment. However, the record contains no evidence of any actual settlement or whether the settlement would have consisted of "cash [or] stock proceeds" covered by the assignment. As a result, this theory is too speculative to establish an amount in controversy exceeding $75,000.

The Reply further argues that Petitioner demanded not only "$74,999," but also costs and interests, which together would exceed the $75,000 threshold. But the diversity jurisdiction statute plainly states that the $75,000 threshold is "exclusive of interest and costs." 28 U.S. Code § 1332.

Finally, Respondent's counterclaim demand of $42,591 and Petitioner's $74,999 demand cannot be combined to reach the threshold. It is true that the demand analysis allows a prevailing arbitration defendant to confirm a $0 award by treating the opposing claimant's demand -- or the amount of liability the defendant avoided -- as the amount in controversy. *See Wise*, 2007 WL 2200704, at *4 (quotations and citations omitted) ("[T]he true value of the award [is] the underlying arbitration demand because this is the value to the defendant of prevailing in the arbitration."). But *Wise* does not discuss the circumstance where as here, Petitioner is both a

7

prevailing claimant for his own claim and the prevailing defendant for a counterclaim. The Second Circuit has suggested that combining claim and counterclaim values to reach the jurisdictional threshold is disfavored, because "the amount in controversy is calculated from the plaintiff's standpoint." *See Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006); *accord Acevado v. Citibank*, N.A., No. 10 Civ. 8030, 2019 WL 1437575, at *12 (S.D.N.Y. Mar. 31, 2019); *Carling v. Peters*, No. 10 Civ. 4573, 2013 WL 865842, at *8 (S.D.N.Y. Mar. 8, 2013) (applying *Correspondent Servs*. to find that the value of the counterclaim should not be considered in determining amount in controversy). This logic applies in the demand analysis context too. It makes sense to construe only the claimant's demand as the maximum amount in controversy, without regard to any counterclaim demand, given the ultimate effect of a counterclaim on a claim. With or without a counterclaim, a claimant can only recover up to the value of the claim, and a successful counterclaim would only offset how much a claimant ultimately receives. Because neither the award approach nor the demand approach results in more than $75,000 being at stake, the Court lacks diversity jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Petition is DISMISSED for lack of subject matter jurisdiction. Pro se Petitioner is advised that he may seek refile a petition in state court.

Dated: July 17, 2019
   New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**